UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                          :

KEVORK TOROYAN,                             :        06 Civ. 4422 (RJH)

                          Petitioner,             :

                                          :        **MEMORANDUM**
           - against -                     :        **OPINION AND ORDER**

                                          :

PATRICK BARRETT,                        :

                          Respondent.           :

                                          :
---------------------------------------------------------------x

On June 2, 2006, Kevork Toroyan petitioned the New York State Supreme Court to confirm an arbitration award against Patrick Barrett, following a proceeding conducted before Professor Hans Smit, an arbitrator from the American Arbitration Association ("AAA"). After removing the petition to this Court, respondent Barrett opposed Toroyan's petition to confirm the arbitration award and moved to vacate the award on two grounds: (1) manifest disregard of the law and (2) evident partiality under 9 U.S.C. § 10(a)(2). For the reasons that follow, petitioner's motion to confirm the arbitration award is GRANTED and respondent's motion to vacate the arbitration award is DENIED.

## BACKGROUND

The claims that are the subject of the arbitration arose from the parties' interest in Delma Power Company LLC ("Delma Power"), a company established to develop and operate electric power projects. Delma Power was created at the instigation of Toroyan, CEO of Consolidated Contractor Company N.V. ("CCC"), a company owned

principally by Said Khoury and Hasib Sabbagh that does extensive business in the Middle East.  Because there appears to have been internal opposition in CCC to the company becoming directly involved in electric power development, several officers of CCC along with Barrett and others set up Delma Power as an affiliate to engage in that business.  Article 13.10 of the Delma Power Shareholders' Agreement provides, in relevant part:

> Except as otherwise provided herein, each Member and the officers of the Company shall inform the other Members of any project development opportunities that appear to be within the general purposes of the Company . . . and provide the Company the opportunity to participate subject to such Member's and officer's ability to influence such third party.  Members associated with MG [Morganti Group, Inc., which includes CCC] shall also inform the other Members of any such opportunities in which MG is involved and provide the Company the opportunity to participate.

(Mem. of L. in Supp. of Vacatur of the Arbitration Award ("Mot. to Vacate") 2 (quoting Shareholders' Agreement, Article 13.10).)  The arbitration concerned claims by Barrett that certain Delma Power shareholders beached this provision.  Specifically, Barrett alleged that CCC acquired an interest in an electric power development project in Gaza without informing Delma Power and providing it an opportunity to participate.

On October 20, 2004, Barrett filed a demand for arbitration pursuant to an arbitral clause in Article 13.10 of the Shareholders' Agreement[1] to address this claim.  (Mot. to

---

[1] Article 13.10 of the Shareholders' Agreement provides, in relevant part: "Mediation. Any dispute arising out of or in connection with this Agreement or the constating documents of the Off-shore Entities, or the conduct of the Company's or the Off-shore Entities' business shall be submitted in writing by the Member to the other Members which shall consider the same and appoint a Member to meet with the moving Member(s) within ten days of the submission. If the matter shall not be resolve d at such meeting, then within 10 working days the moving Member and the appointed Member shall each appoint a disinterested individual with experience in the industry from a recognized list of mediators maintained by

Vacate 4.) In accordance with the arbitral clause, Professor Hans Smit of Columbia University School of Law was selected as the sole arbitrator. (*Id.*) The AAA furnished all parties involved with Professor Smit's biographical information, including his affiliation with Columbia University. (See Aff. of Thomas G. Rohback ("Rohback Aff."), Ex. 1.) At the close of arbitration, Professor Smit issued an Interlocutory Award rejecting Barrett's claims and awarding costs to Toroyan and his co-parties, finding that Toroyan and his co-parties had not breached the Shareholders' Agreement.[2] (Interlocutory Award ¶¶ 51–58.) In the Final Award, dated May 3, 2006, Prof. Smit ordered Barrett to pay the opposing parties $129,227.50, including $29,227.50 for the costs of arbitration and $100,000.00 in legal fees (reduced from the $561,290.28 that had been requested). (Final Award ¶¶ 23–25.)

When Barrett failed to pay the ordered costs, Toroyan filed a petition to confirm the arbitration award ("Petition to Confirm") on June 2, 2006. After removing the action to this Court, Barrett filed a motion to vacate the award, arguing that that it was in manifest disregard of the law and that Prof. Smit's failure to investigate and disclose contributions to Columbia University by related parties amounted to evident partiality. (Mot. to Vacate 5.)

---

the American Arbitration Association, which two individuals shall appoint a third disinterested individual with experience in the industry from the same list of mediators, which individual shall mediate the matter. Such third individuals determination of the merits thereof shall be conclusive and binding on the Members…the place of mediation shall be New York, New York or Los Angeles, California…and the results of the mediation shall be rendered in writing in the English language and shall state the reasons for the determination…the costs of mediation including reasonable legal fees and costs, shall be borne by either or both of the parties in whatever proportion as the mediator may award." (Interlocutory Order ¶ 2 (quoting Shareholders' Agreement, Article 13.10).)

[2] The "Interlocutory Award," issued on March 1, 2006, declined to specify the cost and fee allocation in order to give "the parties a final opportunity to settle their differences." (Final Award ¶ 3.) Because the parties did not reach a settlement, a Final Award specifying costs and fees was issued subsequently.

**DISCUSSION**

"A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances, delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S* ("*Duferco*"), 333 F.3d 383, 388 (2d Cir. 2003); *see also Wallace v. Buttar*, 378 F.3d 182, 183 (2d Cir. 2004) (scope of "federal court review of a decision issued by an arbitral panel . . . is highly constrained"). Barrett advances one common law and one statutory grounds for vacating the award. First, vacatur of an arbitration award is appropriate where there has been a manifest disregard of the law. *See, e.g., Duferco*, 333 F.3d at 388; *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002). Second, under the Federal Arbitration Act, a district court may vacate an arbitration award "where there was evident partiality . . . in the arbitrators." 9 U.S.C. § 10(a)(2) (2006).[3] Barrett has failed to show that either grounds for vacating an arbitration award exist in this case.

**I. Manifest Disregard of the Law**

    **A. Legal Standard**

"An arbitration award may be vacated if it exhibits a manifest disregard of the law." *Goldman*, 306 F.3d at 1216 (internal quotation marks and citations omitted). However, the Second Circuit considers vacatur on the grounds of manifest disregard of the law to be a doctrine of "last resort," reserved for instances where there is "some egregious impropriety on the part of the arbitrators." *Duferco*, 333 F.3d at 389. A party

---

[3] 9 U.S.C. § 10(a) provides, in full, that a district court may vacate an arbitration award: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

4

seeking vacatur must show that: (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators"; (2) "the law was in fact improperly applied, leading to an erroneous outcome"; and (3) "the arbitrator [knew] of its existence, and its applicability to the problem before him."  *Id.* at 390.  A federal court should confirm an arbitration award so long as there is a "barely colorable justification" for the arbitrator's decision.  *Wallace*, 378 F.3d at 190 (citing *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255 (2d Cir. 2003)); *see also Duferco*, 333 F.3d at 385 ("Any plausible reading of an award that fits within the law will sustain it.").

### B. Application

Barrett argues that the arbitrator's decision finding no breach of the Shareholders' Agreement was in manifest disregard of the law because Prof. Smit ignored "[t]he clear meaning" of Article 13.10 of the Delma Power Agreement.  (Mot. to Vacate 11.)  Barrett interprets the provision as prohibiting CCC from engaging in the business of power development unless it first offered the opportunity to Delma Power, and advanced that interpretation during arbitration.  (*Id.*)  Prof. Smit disagreed, finding that CCC was not bound by the Delma Agreement because it was not a party, while Delma Power members and officers were required to "take all appropriate steps to enable Delma Power to compete for participation in the opportunities disclosed."  (Interlocutory Order ¶¶ 55–56.)  He found that the members and officers had satisfied this duty and therefore no breach had occurred.  (Interlocutory Order ¶¶ 57–58.)

Prof. Smit's interpretation of the provision certainly provides a "barely colorable justification" for the finding that no breach had occurred.  *Wallace*, 378 F.3d at 190; *see*

5

*also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (stating that a court should enforce any award in which "the arbitrator is even arguably construing or applying the contract"); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23, 25 (2d Cir. 1997) (observing that "[i]nterpretation of . . . contract terms is within the province of the arbitrator" and so "[t]his court has generally refused to second guess an arbitrator's resolution of a contract dispute" (internal quotation marks and citations omitted)).  While Barrett's interpretation may at least be plausible, it is not sufficiently clear and explicit such that a refusal to apply it would be in manifest disregard of the Agreement.

Barrett also argues that the award of $100,000 in attorneys' fees is in manifest disregard of the law because Prof. Smit failed to consider Barrett's relative financial limitations.  In support of this contention, Barrett cites two cases standing for the proposition that a district court should consider ability to pay in awarding attorneys' fees. *See Toliver v. County of Sullivan*, 957 F.2d 47, 49–50 (2d Cir. 1992) ("[the appellate court] would have reservations about the amount of attorney's fees . . . in the absence of some . . . indication by the district court that it had considered the Plaintiff's financial standing"); *Johnson v. New York City Trans. Auth.*, 823 F.2d 31, 32 (2d Cir. 1987) (holding that in assessing attorneys' fees the court should consider ability to pay).

However, this legal principle is not "explicitly applicable" to an *arbitrator's* award of attorney's fees, but only to a district court judge's award.  This is particularly so where the parties have consented in advance to be bound by the arbitrator's exercise of discretion in determining reasonable attorneys' fees.  *See supra* note 1; *see also Banco de Seguros del Estado*, 344 F.3d at 262 ("Where the arbitration clause is broad, as here,

6

arbitrators have the discretion to order remedies they determine appropriate, so long as the do not exceed the power granted to them by the contract itself."). The fact that Prof. Smit reduced the award from the $561,290.28 that Toroyan originally requested to the $100,000.00 that he deemed more appropriate is evidence that he exercised sound discretion in assessing the award as he was authorized to do under Article 13.10 of the Shareholders' Agreement.

## II. Evident Partiality

### A. Legal Standard

Under the Federal Arbitration Act, a district court may vacate an arbitration award due to evident partiality on the part of the arbitrator. *See* 9 U.S.C. § 10(a)(2). "[A]n arbitrator's failure to disclose a material relationship with one of the parties can constitute 'evident partiality' requiring vacatur of the award." *See Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004) (citing *Commonwealth Coatings Corp. v. Cont'l Gas Co.*, 393 U.S. 145, 147–48 (1968)). However, courts "have not been quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information." *Andros Compania Maritima, S.A. v. March Rich & Co., A.G.*, 579 F.2d 691, 700 (2d Cir. 1978).

To require disclosure to avoid a finding of "evident partiality," the relationship must be of the sort that "an arbitrator would reasonably regard [it] as creating an impression of possible bias." *Id.* at 701; *see also Morelite Constr. Corp. v. New York City Dist. Council of Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984)

(relationship must be such that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration").[4]  Some "undisclosed relationships . . . are too insubstantial to warrant vacating the award." *Commonwealth Coatings Corp.*, 393 U.S. at 152 (White, J., concurring).  Factors to consider include: "(1) the financial interest the arbitrator has in the proceeding; (2) the directness of the alleged relationship between the arbitrator and a party to the arbitration; (3) and the timing of the relationship with respect to the arbitration proceeding." *Sanford Home for Adults v. Local 6, IFHP*, 665 F. Supp. 312, 320 (S.D.N.Y. 1987).  Where an arbitrator does not know of the potential conflicts, a court should not impute such knowledge, nor impose on the arbitrator a duty to investigate, as a relationship unknown to the arbitrator could not have affected the decision-making process.  *See id.* at 319 n.7.

### B.  Application

Barrett argues that the award should be set aside on the grounds of evident partiality because Prof. Smit failed to disclose that the principal owners of CCC, Said Khoury and Hasib Sabbagh, contributed to the Edward Said chair at Columbia University.  This claim fails for several reasons.  First, it is unlikely that Prof. Smit was even aware of the connection.  Khoury and Sabbagh were just two of a number of contributors to the Edward Said chair, a professorship in an entirely different school of

---

[4] Relying on *Commonwealth Coatings*, Barrett argues that a court may find evident partiality based only on the *appearance of bias*.  (Mot. to Vacate 6.)  However the Second Circuit has consistently treated Justice Black's opinion on this point in *Commonwealth Coatings* as dicta and rejected the appearance of bias standard.  *See, e.g., Morelite Constr. Corp.*, 748 F.2d at 83; *Lucent Techs. Inc.*, 379 F.3d at 30.  Barrett also relies on the Fifth Circuit decision in *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 436 F.3d 395 (5th Cir. 2006). (Mot. to Vacate 7–8.)  However, this case has since been reversed in an en banc decision finding that an arbitrator's failure to disclose the fact that he had previously served as co-counsel with one of the party's attorneys did not amount to evident partiality because the relationship was so trivial that it did not create a *reasonable impression of bias*.  *See Positive Software Solutions v. New Century Mortgages Corp.*, 476 F.3d 278, 283 (5th Cir. 2007) (en banc).  This application of the reasonable impression of bias standard is consistent with Second Circuit jurisprudence.

8

Columbia than that with which Prof. Smit is affiliated. Moreover, Khoury and Sabbagh were not parties to the arbitration, although Sabbagh was related to one party to the arbitration. Without knowledge of the relationship, it could not have affected the arbitration process.

Second, the "connection is not sufficiently significant to warrant disclosure, even assuming [Prof. Smit's] knowledge of said connection." *Sanford Home for Adults*, 665 F. Supp. at 319. Prof. Smit had no financial interest in the outcome of the arbitration. The contribution was by owners of a non-party company, one of whom was related to a party, and amounted to a mere portion of a chair which itself constituted less than 1% of Columbia University's total donations that year. Such a tangential connection is not the "sort of information an arbitrator would reasonably regard as creating an impression of possible bias," so as to require disclosure. *Andros Compania Maritima, S.A.*, 579 F.2d at 701.

Finally, courts have declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship or could have learned of it before or during the arbitration, rather than after it lost. *See Lucent Techs. Inc.*, 379 F.3d at 28; *Andros Compania Maritima, S.A.*, 579 F.2d at 700 (duty to disclose limited to "dealings of which the parties cannot reasonably be expected to be aware" (citations omitted)). In this case, Barrett could easily have obtained information about donations made to Columbia University in general and to the Edward Said Chair in particular prior to the issuance of Prof. Smit's decision as such contributions were a matter of public record. To vacate in such circumstances would encourage parties to remain ignorant of (or fail to reveal) easily discoverable potential conflicts until after

losing, at which time the conflict could be asserted by the embittered party as a "pretext for invalidating the award." *Commonwealth Coatings Corp.*, 393 U.S. at 151. For all these reasons, the Court declines to vacate the arbitration award on the grounds of evident partiality.

## CONCLUSION

For the foregoing reasons, the petition to confirm the arbitration award is GRANTED and respondent's motion to vacate the award is DENIED.

SO ORDERED.

Dated: New York, New York
July 10, 2007

Richard J. Holwell
United States District Judge